In re Kevin P. KIBLER, Debtor.

**MOOG EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,**

v.

**Kevin P. KIBLER, Defendant.**

**Bankruptcy No. 93–11025 B.
Adv. No. 93–1186 B.**

United States Bankruptcy Court,
W.D. New York.

Sept. 30, 1994.

Silverberg, Yood, Sellers & McGorry (Sanford M. Silverberg, of counsel), Buffalo, NY, for plaintiff.

Daniel E. Wisnewski, Buffalo, NY, for debtor/defendant.

CARL L. BUCKI, Bankruptcy Judge.

In all aspects of life, humankind strives to achieve a state of being in which the whole equals more than the sum of its parts. At times, however, we are left with disjointed parts having only a resemblance to the original whole. Such a condition is common to bankruptcy, but seldom so graphically as in the present case.

Moog Employees Federal Credit Union initiated this adversary proceeding to determine the dischargeability of an obligation that was to have been secured by a 1970 Chevrolet Camaro Z–28. The debtor, Kevin P. Kibler, acquired this vehicle in March of 1987 for $6,500. To finance this purchase, Mr. Kibler borrowed $6,000 from Moog Employees Federal Credit Union, and granted to the Credit Union a security interest in the vehicle. As a classic automobile and collectible, this particular car was thought to enjoy the prospect of appreciating value. After adding improvements to upgrade the vehicle, Mr. Kibler supplied the Credit Union with two appraisals. The first showed a value of $12,500 as of June 21, 1990, and provided the basis for a loan of additional monies. Thereafter, the debtor supplied a second appraisal dated September 9, 1991, which set forth a value of $16,000. Having properly perfected its lien, the Credit Union had reason to believe that it had fully protected its loan position.

Kevin Kibler was laid off from his employment as of March 24, 1992. Finding it difficult to meet his obligations to the Credit Union, he made application on November 10, 1992, for an extension of the repayment terms. Even though Mr. Kibler had defaulted on his loan and was still unemployed at the time, the Credit Union granted this application. The parties executed a revised promissory note on December 8, 1992. Despite the reduced payment schedule, Kibler was unable to meet his new obligations. He made only a partial payment in February 1993, and filed a petition for relief under chapter 7 on April 2, 1993.

When Kevin P. Kibler filed his bankruptcy petition, he owed Moog Employees Federal Credit Union a principal balance of $7,162.96. The Credit Union soon discovered, however, that its collateral was substantially dissipated. Kibler testified that at a point in time, the car had begun to experience mechanical difficulties. Determining that he needed to rebuild the engine, Kibler decided "to go through the whole car from top to bottom and make it as perfect" as he could. He had virtually dismantled the entire car when he learned of his imminent loss of employment. Due either to a loss of interest or to a lack of funds, Kibler chose not to reassemble the various parts. Instead, he began to sell certain of the components. Indeed, Kibler sold some of the parts even before his execution of the revised promissory note in December 1992. By the time that the Credit Union was prepared to repossess its collateral, little was left but a shell. In his schedules, the debtor admits that the residual parts collectively had a value of zero. Facing a total loss of its security, the Credit Union contends that the debt is nondischargeable under the provisions of 11 U.S.C. § 523(a)(2), (4), and (6).

■■■■ This court rejects the notion that the debt is nondischargeable under either subdivision 2 or 4 of section 523(a). Subdivision 2 of this section precludes a discharge of loans "to the extent obtained" through means of fraud or through use of false pretenses, or false representations, or use of a statement that is materially false. Section 523(a)(2) relates only to the creation of the current credit relationship. For relief under this section, a plaintiff must establish a causal connection between the misrepresentation and the loss suffered. *In re Arterburn*, 15 B.R. 189, 192 (Bkrtcy.W.D.Okla.1981). In the present case, Kibler executed promissory notes on three occasions: upon the initial loan of $6,000.00, upon the advance of additional money, and upon the modification of repayment terms in December 1992. The Credit Union fails to demonstrate that the debtor committed fraud or presented a false appraisal in connection with either the first or second of the promissory notes, when it advanced funds to the debtor.[1] Surely, the subsequent value of residual parts can hardly serve as evidence of the falsity of an appraisal submitted to show value as an operating vehicle. Rather, any false representation occurred only in connection with the modification of repayment terms in December 1992. The Credit Union fails, however, to demonstrate that any such misrepresentation was a proximate source of financial loss. It extended no new money on the occasion of its final loan modification. Inasmuch as the debtor was already unemployed and had already defaulted on his loan obligation, the creditor's forbearance constituted a final attempt to forestall a probable loss, rather than to enlarge the risk of loss. This is not to say that the mere forbearance of an existing obligation can never entail financial loss. In the present circumstance, however, the Credit Union has made no showing that any misrepresentation or misleading appraisal caused it to suffer losses greater than those which it would have otherwise incurred.

■■■■ With respect to subdivision 4 of section 523(a), the Credit Union urges that its claim is nondischargeable because it arises from an embezzlement by the debtor. As this Court explained recently in its decision in *In re Contella*, 166 B.R. 26 (Bkrtcy. W.D.N.Y.1994), embezzlement involves the appropriation of property belonging to another person or entity. Title to the property here at issue rested with the debtor. As owner, he simply could not embezzle from himself.

1. *See Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 127 B.R. 1004, 1010 (N.D.Ill.1991).

■ Ownership may have its privileges, but those privileges can never justify a deliberate and malicious injury to the property interests of a secured creditor. For this reason, the Credit Union correctly invokes the protection of 11 U.S.C. § 523(a)(6), which exempts from discharge any debt "for willful and malicious injury by the debtor ... to the property of another entity." In this instance, Moog Credit Union extended credit based upon the existence of a functional automobile as collateral. By itself, the dismantling of the vehicle did not constitute a malicious injury. Surely, a lienor would anticipate that any machine might be disassembled for repair purposes. Moreover, this particular car was a "show vehicle." Inherent to that character is an expectation that the vehicle would be subject to constant tinkering and refinement. The very purpose for ownership is not transportation, but the creative opportunity for artistic display of a mechanical masterpiece. The Credit Union knew, or at least should have known, that the car would be disassembled.

Had the debtor merely dismantled the car without the disposition of any parts, this Court would be unable to find any willful and malicious injury. Nothing in the present record indicates that the debtor initiated the disassembly with a malicious intent never to reassemble the parts. The testimony indicates that he decided not to attempt reassembly only after losing his job, that being the source of income to finance any necessary repairs. Rather, the willful and malicious injury occurred when the debtor chose to sell the parts rather than to make them available for reassembly as a vehicle in need of repair. Once vital parts were removed, no mechanic could restore its value. Accordingly, the debtor's disposition of the parts constituted a willful and malicious injury, thereby creating a claim that is nondischargeable.

■ The Credit Union argues that the debtor's willful and malicious conduct caused it to lose the entire value of its collateral, that that value exceeded the outstanding loan balance, and that as a consequence, its entire claim should be deemed nondischargeable. On the other hand, the debtor contends that any willful and malicious conduct was wrongful only with regard to the disposition of used parts. Having already paid the proceeds of the parts sales to the Credit Union, the debtor now asserts that he has already reimbursed the value of any unjust enrichment that the debtor may have realized, and that accordingly, the Court should not attribute any portion of the outstanding loan balance to wrongful and malicious conduct.

■ Section 523(a)(6) extends nondischargeable status only to a debt for willful and malicious injury. Having rejected the claim for nondischargeability under section 523(a)(2), this Court is not prepared to hold that the Credit Union's entire claim must thereby become nondischargeable. Rather, a nondischargeable status attaches only to that portion of the total claim which may be attributed to the debtor's willful and malicious conduct. Nor can the debtor confine nondischargeability to the limits of his unjust enrichment. The defining factor is the extent to which the debtor's wrongful activity causes a reduction in the Credit Union's recovery from its collateral.

■ A lien can provide security only for the value of the underlying collateral. For this reason, the value of collateral at the moment of the debtor's willful and malicious conduct will establish the limits of the nondischargeability of what would otherwise have constituted a secured claim.[2] In the present case, the debtor's wrongful and malicious conduct occurred when he sold parts necessary for reassembly of the vehicle. As noted earlier, this Court finds no wrongfulness in the disassembly of those parts, that being an act that the parties should have contemplated at the time that the Credit Union granted the loan. While it is most unfortunate that the debtor chose not to accomplish that reassembly himself, this Court cannot find malice in his refusal to do so.

---

**2.** In the present instance, the debtor's willful and malicious conduct relates to use of collateral, rather than to the underlying claim. When a debtor acts in willful and malicious ways having no relation to the collateral, the Court's review will necessarily focus upon different considerations.

The Credit Union's nondischargeable claim, therefore, is limited to the value of all components collected and available for reassembly, as they existed immediately prior to their piecemeal liquidation. As to the calculation of this value, the evidence is inadequate at best. In an environment in which components are scarce, additional value attaches from the availability of all or most of the compatible parts needed to complete the unit. For this reason, the price that the debtor received from his sale of parts is not a fair indication of value even without assembly. On the other hand, the value as a tested and operating whole cannot compare to the value of all of the parts. For this reason, the Court cannot attach reliability to the earlier appraisals obtained when the unit was assembled and had a functional engine.

Both parties agree that the remaining collateral has no value. Neither party, however, offers any convincing proof of the liquidation value of the disassembled components immediately prior to their piecemeal dissipation. During discussions in chambers, both counsel agreed that they did not wish to submit further proof and urged the court to ascertain a value from the limited evidence that was available.

Based upon all of the evidence presented, the Court finds that if the debtor had not sold the various components, the Credit Union would have realized a net recovery after costs of liquidation of no more than $3,300. The debtor testified that from the proceeds of his sale of parts, he paid the sum of $900 to the Credit Union. This sum should be applied as a credit against what would otherwise have been the Credit Union's recovery. Accordingly, the damages resulting from the debtor's willful and malicious conduct total $2,400. This sum shall be deemed nondischargeable.

So ordered.