In re William **WHITNER** and Shirley Whitner, Debtors.

**AU PHARMACEUTICALS, INC.,** and Associated Independent Marketers of America, Plaintiffs,

v.

William L. **WHITNER,** Defendant.

**Bankruptcy No. 94–70706.**
**Adv. No. 94–7081.**

United States Bankruptcy Court, E.D. Oklahoma.

March 27, 1995.

Robert Inglish, Okmulgee, OK, for plaintiffs.

Stephen D. Colbert, Flower Mound, TX, for defendant.

### *ORDER*

TOM R. CORNISH, Bankruptcy Judge.

On this 27th day of March, 1995, the Motions for Summary Judgment of the Plaintiffs and Defendant came before this Court for consideration.

After a review of the above-referenced pleadings, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

### *FINDINGS OF FACT*

1. On or about December 27, 1991, the Plaintiffs obtained a judgment in the United States District Court for the Eastern District of Texas against the Defendant, William L. Whitner, for trademark infringement.

2. This Court adopts the statement of facts of the Fifth Circuit in affirming the judgment entered in the United States District Court as follows:

In 1988, Jeff Ivy and Curtis Payne developed a topical analgesic product apparently unique in its use of gold as an ingredient. Ivy and Payne licensed their product to Associated Independent Marketers Incorporated of America (AIM), a company of which they were principals, which market-

ed it under the brand name "Aurum." Initially, GDMI, Inc. manufactured the product for AIM. When GDMI's services proved inadequate, AIM entered into negotiations, subject to a confidentiality agreement, with John Beasley and Rita Gates of SCL. The negotiations culminated in an agreement under which SCL produced Aurum for AIM. Desirous of distributing Aurum as an over-the-counter drug, AIM, upon advice of SCL, made slight changes in its formula to comply with the requirements of the Food and Drug Administration.

In October, 1989, Frank Trent and Don Rhodes resigned from the AIM board of directors and began their own venture distributing gold-based lotions. They purchased MaximHealth, Inc., an AIM subsidiary, acquired a sublicense from AIM to distribute Aurum, and negotiated a trademark license with AIM to distribute Aurum under the name "MaximRelief." SCL manufactured the product for both AIM and MaximHealth. Trent and Rhodes retained the distribution services of William Whitner and WSI for the MaximHealth product.

In December 1989, AIM filed a petition under Chapter 11 of the bankruptcy code. The bankruptcy court approved a sale of substantially all of AIM's assets to AU Pharmaceuticals, Inc. (AUP), another company operated by Ivy and Payne. During the pendency of the bankruptcy proceedings, MaximHealth unilaterally terminated its licensing agreements with AIM, but continued to market the product. Sometime before this termination, and without informing AIM or AUP, SCL developed a new gold-based analgesic product called RG2–85.[1] SCL licensed RG2–85 to MaximHealth, who distributed it through Whitner and WSI, continuing to use the "MaximRelief" name.

In November 1990, AIM initiated an adversary proceeding in the bankruptcy court against Trent, Rhodes, and MaximHealth. AUP intervened, Amendments to the initial complaint stated claims against SCL, Whitner, WSI, and NAS. AIM and AUP sought recovery for misappropriation of trade secrets and conspiracy to misappropriate trade secrets by all defendants; trademark infringement and unfair competition by all defendants except NAS; breach of confidentiality agreement by SCL; breach of fiduciary duty by Trent, Rhodes, MaximHealth, and SCL; business disparagement by Whitner and WSI; and tortious interference with prospective contractual relations by WSI.

3. Before trial, AIM and AUP settled with Trent, Rhodes, and MaximHealth. After a six-day trial, the district court granted judgment as a matter of law against SCL as to liability on all claims and against Whitner and WSI as to liability for trademark infringement. The court granted judgment as a matter of law for Whitner and WSI on plaintiffs' unfair competition, business disparagement, and tortious interference with prospective contractual relations claims. The Plaintiffs obtained a jury verdict against the Defendant in the amount of $1,000 for compensatory damages and $1,000 in punitive damages for misappropriation of trade secrets. The Court, in addition to the jury verdict, ordered Whitner to pay part of the costs and attorneys' fees.

4. The District Court's jury instruction noted that "[p]unitive damages may be awarded for trade secret misappropriation and for breach of fiduciary duty. The Court has found a breach and misappropriation as it relates to Skin Care. You [the jury] have to make the decision as it relates to Whitner. You [the jury] may award punitive damages if the Defendants' conduct was wrongful, intentional and without just cause or excuse." Trial Transcript at 1071.

5. The Verdict Form filed in the District Court found that William Whitner, Whitner Sales, Inc. and North American Sales, Inc. had misappropriated a trade secret belonging to AIM American or AU Pharmaceuticals.

### CONCLUSIONS OF LAW

■ A. This court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151 and 157. This

---

**1.** SCL later attempted to license RG2–85 for marketing.

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

■ **B.** The United States Supreme Court in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) held that bankruptcy courts in appropriate circumstances may give collateral estoppel effect to trial court decisions. Further, the *Grogan* court pronounced that the creditor need only prove by a preponderance of the evidence that the debt qualifies for the exception to discharge.

■ For collateral estoppel to apply, the Court must find:

(1) the issue sought to be precluded is the same as that involved in the prior state court action;

(2) the issue was actually litigated by the parties in the prior action; and

(3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*In re Wallace,* 840 F.2d 762, 764–65 (10th Cir.1988).

■ **C.** Section 523(a)(6) of the Bankruptcy Code provides that a discharge under Section 727 does not discharge an individual from "any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." A "willful and malicious injury" within the meaning of Section 523(a)(6) means "a wrongful act, intentionally . done without just cause or excuse." *In re Springer,* 85 B.R. 634, 635 (Bankr. S.D.Fla.1988) (citations omitted).

■ **D.** The Tenth Circuit in *In re Pasek,* 983 F.2d 1524 (10th Cir.1993) held that the § 523(a)(6) exception required proof of intentional injury. The court in discussing the proof required, stated:

[M]alicious intent [may] be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. Thus, the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor are highly relevant. *Id.* at 1527.

In *Minuteman v. Alexander (In re Alexander),* 166 B.R. 729 (Bankr.D.N.M.1993), the debtor's former corporate employer brought an adversary proceeding to except from discharge a judgment arising out of litigation in the Wisconsin state court. The Wisconsin court found that the corporation's trade secret had been misappropriated. The bankruptcy court held that the findings of the Wisconsin state court satisfied the definition of "willful and malicious" under the bankruptcy code. *Id.* at 731. The bankruptcy court specifically found that the debtor was a party to the state court proceedings, the issues in the case were identical to those actually litigated in the state court action, and the issues decided were necessary to the outcome of the case. *Id.* at 732. In doing so, the bankruptcy court found that the state court findings established a "willful and malicious" injury. *Id.*

In *In re Balta,* 151 B.R. 506 (Bankr. E.D.Mo.1993), the court was faced with the same issue as in the instant case. In *Balta,* the jury found that Mr. Balta had intended to deprive and did appropriate and convert to his own use the trade secrets of the plaintiff. *Id.* at 507. The jury also found that the Debtor had received patents, trademarks, customer lists and other assets of the plaintiff and had converted them for his own use. *Id.*

The bankruptcy court in determining that the debt was nondischargeable turned to the Eighth Circuit's definition of "willful and malicious." The Eighth Circuit in *In re Long,* 774 F.2d 875, 881 (8th Cir.1985), held that to meet the willfulness component of § 523(a)(6), a debtor's actions must have been "headstrong and knowing" and that to also qualify as "malicious" they would have been "targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause financial harm." The state court in *Balta* found that the debtor had "intended to deprive and did appropriate and convert to his own use and the use of his corporation ... trade secrets" and that "while in the employ of the Plaintiff, [Debtor]

personally received delivery of patents, trademarks, customer lists and other assets . . . and converted [these] items for his own use." *Id.* at 508.

The bankruptcy court in *Balta* found that the state court had rendered a final judgment and Mr. Balta was a party to those proceedings. Furthermore, the findings made by the state court were necessary to the determination of the state court action and as a result, the bankruptcy court held that all of the elements of collateral estoppel had been met. *Id.* The bankruptcy court in *Balta* determined that all of the elements of section 523(a)(6) had been met and that no further genuine issue of fact remained to be determined. *Id.*

For a plaintiff to recover for trade secret misappropriation, it must show the existence of a trade secret, a breach of a confidential relationship or improper discovery of a trade secret, use of the trade secret and damages. *Taco Cabana Int'l. v. Two Pesos, Inc.,* 932 F.2d 1113 (5th Cir.1991), *aff'd* 502 U.S. 1071, 112 S.Ct. 964, 117 L.Ed.2d 130 (1992). In the instant case, the Debtor was a party to the district court action. The issue sought to be litigated was whether the debtor misappropriated the Plaintiffs' trade secrets. Further, the Fifth Circuit, in its opinion affirming the district court, stated:

> Whitner, WSI and NAS argue an absence of evidence that they had access to the Aurum formula. ACL suggests an absence of evidence that it used the Aurum formula to produce RG2–85. The record, however, supports neither contention, At trial, AIM and AUP adduced testimony that the similarity between RG2–85 and Aurum formulae indicates an exceedingly low probability of independent development. The plaintiffs further put on evidence that the 24K formula bore a similar likeness to the Aurum formula. Such evidence gibes rise to an inference that Whitner had access to the Aurum formula, and that SCL utilized that formula to develop RG2–85. The defendants identify no contrary evidence in the record, other than bald denials by SCL employees regarding misappropriation.

*Associated Independent Marketers, Inc. of America and AU Pharmaceuticals, Inc. v. MaximHealth, et al.,* 1 F.3d 1237 (5th Cir. 1993).

The trial court in Texas specifically instructed the jury that they could award punitive damages against Whitner if they found that Whitner's conduct was "wrongful, intentional and without just cause or excuse." The jury determined that the Defendant misappropriated the Plaintiffs' trade secrets. Therefore, the compensatory and punitive damage awards against the Defendant are clearly nondischargeable.

Lastly, this Court must address the issue of whether the debt relating to attorneys' fees is nondischargeable. An attorney fee award which was entered in connection with a debt found to be nondischargeable under the "willful and malicious injury" exception was itself excepted from discharge. *In re McGuffey,* 145 B.R. 582 (Bankr.N.D.Ill. 1992); *In re Limbaugh,* 155 B.R. 952 (Bankr. N.D.Tex.1993). When a debt is determined to be nondischargeable, attendant attorneys' fees, interest and costs are also nondischargeable. *In re Green,* 138 B.R. 622 (Bankr.D.N.M.1992); *In re Fitzgerald,* 109 B.R. 893 (Bankr.N.D.Ind.1989); *In re Horowitz,* 103 B.R. 786 (Bankr.N.D.Miss.1989). As a result, this Court finds that the award of attorney fees against Whitner is nondischargeable as well as the award of court costs. Thus, the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Bankruptcy Rule 7056, incorporating Rule 56, Fed.R.Civ.P., requires that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In the instant case, there is no genuine issue for this Court to determine and thus, summary judgment is appropriate.

IT IS THEREFORE ORDERED that summary judgment is granted for the Plaintiffs pursuant to the Order of the United States District Court for the Eastern District of Texas.