**In re Kenneth WRIGHT, Debtor.**

**Kenneth WRIGHT, Appellant–Debtor,**

**v.**

**Stanislaw BUJNOWSKI and Eva Bujnowski, Appellee–Creditor.**

**Bankruptcy No. 95–CV–2072 (TCP).**

United States District Court,
E.D. New York.

May 19, 1997.

Eric Proshansky, Tenzer Greenblatt LLP, New York City, for debtor.

### MEMORANDUM AND ORDER

PLATT, District Judge.

Appellant KENNETH WRIGHT seeks reversal of a decision by United States Bankruptcy Judge Dorothy Eisenberg denying his petition to discharge a debt pursuant to Title 11 of Chapter 7 of the United States Bankruptcy Code.

### BACKGROUND

Appellee STANISLAW BUJNOWSKI was employed by the Wright–Giuliani Corporation d/b/a Baldwin Lumber Company ("Baldwin Lumber") from 1989 until April 1992. Appellee EVA BUJNOWSKI is Mr. Bujnowski's wife. Kenneth Wright was the sole officer, director, and shareholder of Baldwin Lumber.

Baldwin Lumber enrolled Mr. Bujnowski and his family in the company's group medical insurance plan after three months of employment. Baldwin Lumber thereafter deducted twenty-three dollars a month from Mr. Bujnowski's wages to pay for a portion of the insurance premiums.

In 1991, Baldwin Lumber began to experience financial difficulties and could not timely meet its financial obligations. As a result, Mr. Wright began to pay Baldwin's bills in the following order: employee's salaries first, then medical insurance, then suppliers, and finally sales tax. Mr. Wright's payment strategy produced the debt at issue here.

Baldwin Lumber's insurance payment was due on the first day of each month. Failure to meet that obligation led the insurance company to send a notice on the fifteenth of the month stating that Baldwin Lumber had thirty days to pay the premium or it would cancel Baldwin's policy.

. The insurance company received Baldwin Lumber's check for the 1 May 1991 payment on the sixteenth or seventeenth of June. (R. at 90.) In conformance with its notice, the insurance company had suspended the policy on the fifteenth of June, but reinstated the policy when it received the check. This sequence was repeated in August 1991: Baldwin's check was late, the insurance company suspended the policy, then reinstated when the check finally arrived.

In November 1991, the insurance company notified Wright—as it had on each previous occasion—that he had until 15 December 1991 to make the November payment or it would cancel the policy. On 15 December 1991 Wright sent the insurer a check dated 17 December 1991 for the stated amount. The insurance company received the check on 20 December 1991, but three days later sent Wright a letter containing a refund of the check and notifying him that "the policy would remain lapsed effective November 1, 1991 with no offer to reinstate." (R. at 146).

Baldwin deducted money from Mr. Bujnowski's wages to cover his insurance premiums throughout 1991. Baldwin never notified Bujnowski that it was having trouble making payments or that the insurance policy repeatedly had been suspended.

On 1 November 1991 Stanislaw Bujnowski underwent surgery costing $4,271.25. On 3 December 1991 Eva Bujnowski underwent surgery costing $16,252.25. Appellees duly filed insurance claims for their respective surgeries. The insurance company denied those claims, stating that the policy had been canceled because the premiums had not been paid. When the Bujnowskis submitted their bills to Baldwin Lumber and Wright for payment, Wright also refused to pay.

In April 1992, Baldwin Lumber filed for Bankruptcy protection. On 22 July 1993 Mr. Wright filed a voluntary bankruptcy petition seeking to discharge all unsecured claims pursuant to Chapter 7 of Title 11 of the United States Bankruptcy Code. Appellees made a motion to except the debt at issue from discharge on grounds of fraud or defalcation, while acting in a fiduciary capacity, pursuant to 11 U.S.C. § 523(a)(4), and willful and malicious injury, pursuant to 11 U.S.C. § 523(a)(6).

On 8 March 1995 Judge Eisenberg ordered that Mr. Wright be denied a discharge of the debt on the grounds of fraud or defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4). Appellant's attorney asserts that, at a subsequent hearing, the Bankruptcy Court made clear that its order was in fact grounded on willful and malicious injury under 11 U.S.C. § 523(a)(6). Despite a lack of supporting evidence, this Court takes that assertion as true; because employers normally are not trustees for their employees, *In re Peel*, 166 B.R. 735, 738 (Bankr.W.D.Okla.1994), Section 523(a)(4) can have no application to the instant facts.[1] Appellant now argues that it was error to apply Section 523(a)(6) to this case.

Jurisdiction is founded on 28 U.S.C. § 158(a)(1).

---

1. Appellant does not raise issue on appeal with regard to Section 523(a)(4). Thus, Judge Eisenberg's ruling, as amended, must be affirmed to the extent that it may have relied on that provision.

## DISCUSSION

The issue in this case is whether the debt arising out of Wright's failure to maintain Bujnowski's insurance despite regularly deducting money from his wages on the express representation that Baldwin would maintain such insurance should be excepted from discharge under Section 523(a)(6). The Bankruptcy Court held that it should be because Wright's action constituted "willful and malicious injury." This Court will review this question *de novo*. *In re Momentum Mfg., Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994).

Section 523(a)(6) provides in pertinent part: "A discharge under... this title does not discharge an individual debtor from any debt... for willful and malicious injury by the debtor to another entity or to the property of another." 11 U.S.C. § 523(a)(6). Though "willful and malicious" has appeared in the Bankruptcy statutes since the Bankruptcy Act of 1898, Congress has not statutorily defined the phrase.

Before Congress amended the Bankruptcy Act in 1978, the Supreme Court in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) held that an act could be malicious even absent personal malevolence and that a willful act was one done intentionally and voluntarily. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988). "[W]e think a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception." *Tinker*, 193 U.S. at 489, 24 S.Ct. at 509. Courts drew two principal propositions from *Tinker*: "first, that the term 'willful' includes reckless disregard of a duty; second, that 'malicious' includes constructive or implied malice." *In re Conte*, 33 F.3d 303, 306 (3rd Cir.1994) (citing *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (4th Cir.1985)).

Congress retained the "willful and malicious" language when it amended the Bankruptcy Act in 1978. However, the House Judiciary Committee's Report on the amended Act made clear that recklessness no long-

er would be the applicable standard. The report states that " 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell* [citations omitted], held that a less strict standard is intended, and to the extent that other cases have relied on Tinker to apply a 'reckless disregard' standard, they are overruled." S.Rep. No. 989, 95th Cong.2d Sess. 79 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5865; H.R.Rep. No. 595, 95th Cong., 2d Sess. 365 (1978), U.S.Code Cong. & Admin. News 1978, 6320–6321. Though Congress' intent may have been to clarify the applicable standard, its effect was to exacerbate a substantial split between the circuits as to the appropriate meaning of "willful and malicious." See *Printy v. Dean Witter Reynolds Inc.*, 110 F.3d 853, 858–60 (1st Cir.1997) (reciting roughly equal split between circuits as to appropriate definition).

Fortunately, the Second Circuit's most recent pronouncement on this issue is logical, derives substantial support from the other circuits, and produces a sensible result in this case. As to the meaning of "willful," the Circuit Court quoted directly from the House Report: " 'willful' in th[e Section 523(a)(6) ] context means 'deliberate or intentional.' " *In re Stelluti*, 94 F.3d 84, 87 (2d Cir.1996). The weight of authority supports that interpretation. See *Printy*, 110 F.3d at 859–60; *In re Walker*, 48 F.3d 1161, 1163 (11th Cir.1995); *Chrysler Credit Corp. v. Perry Chrysler Plymouth*, 783 F.2d 480, 486 (5th Cir.1986); *St. Paul Fire*, 779 F.2d at 1008, 4 Collier on Bankruptcy, ¶ 523.12[1], at 523–90 (15th ed.1996). The Circuit Court defined malicious as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Stelluti*, 94 F.3d at 87. Though more contentious, this definition also is well subscribed. See *Printy*, 110 F.3d at 859–60; *In re Cecchini*, 780 F.2d 1440, 1442 (9th Cir.1986); *Walker*, 48 F.3d at 1164. "Malice may be constructive or applied." *Stelluti*, 94 F.3d at 88.

The circuit split derives as much from application of Section 523(a)(6) as it does from the definition of "willful and malicious." Critical to proper application is the fact that the Section 523(a)(6) standard "gen-

erally relates to torts and not to contracts." 4 Collier on Bankruptcy, ¶ 523.12, at 523–89 (15th ed.1996). Thus, in applying the standard, courts properly should look to tort law to distinguish the "willful and malicious" from the merely "reckless" act. At the "willful and malicious" end of the continuum are acts which, though not themselves animated by personal hatred or ill-will, have consequences which "are certain, or substantially certain, to result from the act." Restatement (Second) of Torts 8A; *Printy*, 110 F.3d at 859–60; *In re Gergely*, 110 F.3d 1448, 1450–51 (9th Cir.1997); *see Walker*, 48 F.3d at 1164 (finding specific intent to harm not necessary for discharge). Moving down the continuum, "[a]s the probability that [a certain] consequence[ ] will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent and becomes mere recklessness." Restatement (Second) of Torts 8A (1979).

■ In light of the foregoing, the Bankruptcy Court was correct in its decision to deny appellant's petition. Mr. Wright had actual knowledge of his obligation to provide insurance for the Bujnowskis; he withheld twenty three dollars from Mr. Bujnowski's salary each month and applied that money to family insurance coverage for the Bujnowskis for at least two years. He also knew, to a certainty, that cancellation of that policy would leave the Bujnowskis without medical insurance. The insurance company first suspended Baldwin Lumber's policy, with notice to Wright, on or around 15 June 1991 after Wright failed to send the May payment on time. The company reinstated the policy upon receipt of that payment, but suspended it once again, again with notice to Wright, when Baldwin's August check was late. With each notice, Wright was informed not only that his employee's insurance had been suspended, but that it could be canceled at any time as a result of his repeated failures to pay on time. With each suspension, and with the likelihood of eventual cancellation, Wright was playing Russian Roulette with his employee's need for health care and the often massive costs associated therewith.

Wright's actions, from his first failure to pay the insurance premium on time, were substantially certain to harm Baldwin employees. With each passing day, the certainty of substantial harm to those employees increased, to a point where harm became inevitable. Arguably, after the June suspension notice, Wright's payment strategy was merely reckless. However, the same may not be said concerning the August suspension and notice, and certainly may not be said concerning the November suspension. By his willful failure to pay, Wright on each occasion caused his employees to be effectively without insurance and courted the spectre of termination. Wright's actions not only were deliberate and intentional, they were knowingly wrongful, done without just cause or excuse, and substantially certain to cause harm. *See Stelluti* 94 F.3d at 87.

Even absent personal hatred, spite, or ill-will towards Baldwin employees, Wright's acts were both willful and malicious. *Id.; Cf. In re Ussery*, 179 B.R. 737, 739–40 (Bankr. S.D.Ga.1995) (holding failure to carry auto insurance required by state law inflicted willful and malicious injury).[2] Like the appellant in *Stelluti*, though Wright's acts may have had preservation of his own interests as their primary purpose, their necessary result was to harm Baldwin employees. Because Wright's acts were willful and malicious as defined under Section 523(a)(6), the Bankruptcy Court correctly denied Wright's petition to discharge the debt at issue.

■ Further support for this conclusion is found in the fact that Wright effectively con-

2. Courts also are split as to whether failure to procure or maintain auto insurance may constitute willful and malicious injury under Section 523(a)(6). *See In re Brown*, 201 B.R. 411, 413–14 (Bankr.W.D.Pa.1996) (citing cases on both sides). Though Section 523(a)(6) demands case-by-case analysis, one basic distinction between "employee health insurance" cases and auto insurance cases is the fact that employers may be directly responsible for insuring relatively large numbers of people. Because the "certainty" that failure to insure will cause harm increases statistically with each additional employee covered, employee health insurance cases almost by definition must be placed farther along the "continuum" set forth above than auto insurance cases. Compared with auto insurance—which most of us hope never to have to use—typically annual utilization of health insurance by most people further increases the "certainty" of harm.

verted the funds he took from Bujnowski each month for insurance. "[C]onversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of [Section 523(a)(6)]." *Cecchini*, 780 F.2d at 1443 (citing Collier on Bankruptcy); *see Printy* 110 F.3d at 860 (finding that conversion "translates easily into an intent to willfully and maliciously cause harm"). Though the conversion at issue here took place only for short periods, and the amount converted is substantially less than the amount of the entire debt at issue, Wright's conversion of a portion of Bujnowski's pay lends support to the conclusion that the entire debt should not be discharged. *See Printy*, 110 F.3d at 859–60.

### CONCLUSION

For all of the foregoing reasons, appellants' appeal must be, and the same hereby is, DISMISSED, and the decision of the Bankruptcy Court must be, and the same hereby is, AFFIRMED.

SO ORDERED.