In re Deborah L. BLANKFORT, Debtor.

BUNDY AMERICAN CORPORATION, Plaintiff,

v.

Deborah L. BLANKFORT, Defendant.

Bankruptcy No. 96 B 20855(ASH).

Adversary No. 96–5133A.

United States Bankruptcy Court, S.D. New York.

Jan. 29, 1998.

**140**

Eva H. Posman, New York City, for Plaintiff.

Barr & Rosenbaum, L.L.P., by Elizabeth A. Haas, Spring Valley, NY, for Debtor/Defendant.

### DECISION GRANTING PARTIAL SUMMARY JUDGMENT

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

This is an adversary proceeding to determine the dischargeability under 11 U.S.C. § 523(a)(6) of certain judgment debts owed by debtor/defendant ("Debtor") to plaintiff Bundy American Corporation ("Bundy") based upon judgments rendered in an action in the United States District Court for the Southern District of New York (the "District Court Action"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

Bundy has moved for summary judgment based upon the doctrine of collateral estoppel. For the reasons set forth below, summary judgment is granted as to the so-called Contempt Judgment and denied as to the Damages Judgment.

#### Background

Bundy is the franchiser of "RENT–A–WRECK" franchises for leasing automobiles, vans and trucks throughout the United States. It owns the rights to and interests in the proprietary trade name and service mark "RENT–A–WRECK" and related logo. In February 1982 Bundy and Motorcar Exchange, Inc. ("MEI"), a corporation jointly owned by Debtor and her husband, Gary Blankfort, entered into a franchise agreement (the "Franchise Agreement") which provided for MEI to operate a RENT–A–WRECK franchise in Rockland County for a ten-year term. By agreement dated January 7, 1992 the Franchise Agreement was extended for an additional term. Because of MEI's continuing defaults under the Franchise Agreement, on August 3, 1994 Bundy sent MEI a notice of default, and on August 19, 1994, after MEI advised Bundy that MEI would not cure its defaults, Bundy sent MEI a notice terminating the Franchise Agreement.

Under paragraph 16 of the Franchise Agreement, upon termination MEI was required to immediately terminate its business as a RENT–A–WRECK franchisee and desist from using any RENT–A–WRECK trademarks, trade names or logos. Notwithstanding paragraph 16, MEI continued to carry on the business of a RENT–A–WRECK franchisee.

On November 21, 1994 Bundy commenced the District Court Action against MEI and Gary Blankfort.[1] The next day, November 22, 1994, the District Court signed an Order on Consent (the "Injunction Order"), signed on behalf of defendants and Bundy, under which MEI and "its officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations acting in concert, participation and combination with it" were permanently enjoined and restrained from any continued operation of a RENT–A–WRECK franchise or use of the RENT–A–WRECK trade and service marks and logo.

In violation of the Injunction Order the Debtor, Gary Blankfort and MEI continued to operate a RENT–A–WRECK franchise and to use the trade and service marks and logo of Bundy. A hearing was held on January 13, 1995 at which Debtor, MEI and Gary Blankfort were found in contempt of the Injunction Order, and further orders were entered by the District Court on January 13 and January 17, 1995. On March 14, 1995 the District Court again found the Debtor,

---

**1.** On March 20, 1995 the complaint in the District Court Action was amended and the Debtor was made a party to the Action.

MEI and Gary Blankfort to be in contempt of Court for having violated the Injunction Order and the further orders entered by the District Court on January 13 and 17. On March 17, 1995, because the Debtor violated a direct order of the Court made to her on March 14, 1995, the District Court issued a warrant for the Debtor's arrest. Debtor was arrested and brought to the Court for a further hearing on March 17, 1995. Following the March 17 hearing, Debtor was released on her own recognizance pending a hearing on damages for contempt to he held by Magistrate Judge Mark D. Fox.

On May 31, 1995, following a hearing on damages for contempt, Magistrate Judge Fox issued a Report and Recommendation (the "Contempt Report") finding that Debtor and the other defendants in the District Court Action had acted "in blatant and willful violation of the" District Court's several orders. The Magistrate Judge found that Bundy had suffered damages during the period from November 22, 1994 through March 31, 1995. On August 8, 1995 District Judge Barrington D. Parker, Jr. confirmed the Contempt Report and entered judgment in the total amount of $71,877.07, including double damages in the sum of $49.881.20, legal fees and costs in the amount of $20,995.87 and sanctions in the amount of $1,000 (the "Contempt Judgment").

The defendants in the District Court Action defaulted, and by order dated December 7, 1995 the District Court granted Bundy's motion for a default judgment and referred the case to Magistrate Judge Fox to conduct an inquest with respect to damages. An inquest was held by Magistrate Judge Fox on January 16, 1996, at which the defendants in the District Court Action appeared. Following additional submissions by both sides, Magistrate Judge Fox issued his Report and Recommendation (the "Default Judgment Report") on February 21, 1996 finding that Bundy had suffered damages as a result of Debtor's willful trademark infringement from August 19, 1994 through November 21, 1994 and recommending an award of damages and attorneys' fees. The District Court approved the Default Judgment Report with minor modification and, by order dated April 3, 1996 entered judgment in the total amount of $86,276.33 (the "Damages Judgment") as damages for willful trademark infringement from August 19 through November 21, 1994 plus costs and attorneys' fees.

### Discussion

### Summary Judgment

Federal Rule of Civil Procedure 56(c), made applicable to the bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Summary judgment is favored to dispute of meritless claims. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn forth the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103,* 998 F.2d 129, 131 (2d Cir.1993); *Thomson McKinnon Sec. Inc. v. Leasure (In re Thomson McKinnon Sec. Inc.),* 132 B.R. 9, 11 (Bankr.S.D.N.Y.1991); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the movant has made its showing, the burden of production shifts to the non-movant who must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file'", establish that there is a specific and genuine issue of material fact warranting a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The non-movant cannot cast some metaphysical doubt on the moving party's assertions. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bryant v. Maffucci,* 923 F.2d 979, 982

(2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (a summary judgment motion will not be defeated on the basis of conjecture or surmise). The non-movant must present specific significant probative evidence supporting its case sufficient "to require a . . . judge to resolve the parties' differing versions of the truth at trial." *Moratzka v. Visa U.S.A.* (*In re Calstar, Inc.*), 159 B.R. 247, 251 (Bankr.D.Minn.) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Further, the existence of disputed issues of fact will not result in denial of a motion for summary judgment unless the disputed issues are material to the determination of the legal claims and defenses. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment"); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1066 (2d Cir.1995). The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the non-moving party's case. *See Gallo,* 22 F.3d at 1223–24.

### Collateral Estoppel

It has been firmly established that collateral estoppel in the bankruptcy court is applicable in dischargeability actions. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The premise underlying collateral estoppel is that once a specific issue has been determined in a prior proceeding by a court of competent jurisdiction, the parties and the court need not relitigate the issue in another suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4 (1979).

"[When] the issues sought to be precluded were decided by a federal court, as in the case at bar, the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel." *In re Wright,* 187 B.R. 826, 832 (Bankr.D.Conn. 1995) citing *Blonder–Tongue Laboratories,*

*Inc. v. University of Illinois Foundation,* 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971).

In *Grogan v. Garner,* the Supreme Court endorsed the formulation of the doctrine of collateral estoppel as expressed by the Second Restatement of Judgments. *Grogan v. Garner,* 498 U.S. at 284, 111 S.Ct. at 657–58. "The Restatement (Second) of Judgments articulates the general rule at collateral estoppel as follows: 'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *In re Wright,* 187 B.R. at 832. This general statement has been reduced to a four-pronged test by various courts. *E.g., Graham v. Billings,* 94 B.R. 803, 808 (Bankr.E.D.N.Y.1989). A typical formulation of this test states that collateral estoppel will be triggered when:

1. the issues sought to be precluded are identical to those involved in the prior action;

2. the issues' determination in the prior action was essential to the prior judgment;

3. the issues were determined by a valid and final judgment; and

4. the issues were actually litigated in the prior action;

*Id.; see also Davidcraft Corp. v. Baer (In re Baer),* 161 B.R 334, 337 (Bankr.N.D.N.Y. 1993); *In re Wright,* 187 B.R. at 832.

### Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code declares that a discharge under section 727 "does not discharge an individual from any debt— . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." Many decisions have construed the terms "willful" and "malicious" as used in this subsection. The term "willful" is not controversial generally, or as applied to the facts in this case. It refers to acts done deliberately or intentionally. *In re Cohen,* 121 B.R. 267, 270 (Bankr. E.D.N.Y.1990) (Citing *In re Ikner,* 883 F.2d 986 (11th Cir.1989)); *In re Bossard,* 74 B.R.

730 (Bankr.N.D.N.Y.1987): *In re DeRosa,* 20 B.R. 307, 313 (Bankr.S.D.N.Y.1982); *In re Pommerer,* 10 B.R. 935, 940 (Bankr.D.Minn. 1981); 3 Collier on Bankruptcy § 523.16, p. 523 (15th ed.1989). The term excludes any form of negligent conduct. *See Wells v. Jennings (In re Jennings),* 188 B.R. 110, 113 (Bankr.E.D.N.Y.1995) ("Mere negligence, even if gross or reckless, will not support an exception under 11 U.S.C. § 523(a)(6)").

More difficult is the term "malicious." In the present case there was no specific finding in either the Contempt Report or the Default Judgment Report with respect to the element of "malice," and the Debtor and her co-defendants in the District Court Action may be presumed for purposes of this motion to have acted in their own economic self-interest, since there was no actual finding of fact by the Magistrate Judge that the District Court defendants acted as they did solely for the purpose of inflicting injury on Bundy. The issue, then, is whether conduct can be found to be "malicious" within the meaning of subsection (6) in the absence of proof that the debtor acted with genuine malevolence demonstrating an actual intent to inflict harm on the party injured, sometimes referred to as "Biblical malice." The majority of the reported decisions, and the cases in the Second Circuit, hold that the party seeking to avoid discharge under section 523(a)(6) need not establish actual malevolence in the sense of an intent to inflict injury.

The meaning of the term malicious has been the subject of much debate. *In re Krautheimer,* 210 B.R. at 47. A number of courts follow an "actual malice" standard. *See In re Contella,* 166 B.R. 26, 28 (Bankr. W.D.N.Y.1994) (citing 3 Collier on Bankruptcy § 523.16[1] 523–129) (15th ed.1979); *In re Gallaudet,* 46 B.R. 918, 927 (Bankr.D.Vt. 1985); *In re Capozziello,* 55 B.R. 951, 955 (Bankr.D.Conn.1985); cf. *In re Jennings,* 188 B.R. 110, 113 (Bankr.E.D.N.Y.1995). The Second Circuit has adopted the concept of "implied malice". *In re Stelluti,* 94 F.3d 84, 88 (2d Cir.1996) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.") quoting *In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989); *see In re Overmyer,* 52 B.R. 111,

120 (Bankr.S.D.N.Y.1985); *In re Chapin,* 155 B.R. 323, 326–27 (Bankr.W.D.N.Y.1993); *In re Kaperonis,* 156 B.R. 736, 740 (Bankr. S.D.N.Y.1993). Several other circuit courts have followed the Eighth Circuit formulation in *In re Long,* 774 F.2d 875, 880–81 (8th Cir.1985), which said that the word malice "must apply only to conduct more culpable than that which is in reckless disregard of creditors' economic interest," and that "knowledge that legal rights are being violated is insufficient to establish malice, absent some additional 'aggravated circumstances,' under *Davis* [*v. Aetna Acceptance Co.* 293 U.S. 328, 328, 333, 55 S.Ct. 151, 151, 153–54, 79 L.Ed. 393 (1934)] and its recent progeny." *See In re Pasek,* 983 F.2d 1524, 1527 (10th Cir.1993); *Matter of Hartley,* 869 F.2d 394, 395 (8th Cir.1989); *Reynolds–Marshall v. Hallum,* 162 B.R. 51, 55 (D.Me.1993); *In re Whitner,* 179 B.R. 699, 702 (Bankr.E.D.Okl. 1995); cf. *In re Held,* 734 F.2d 628, 630 (11th Cir.1984).

Courts have applied Section 523(a)(6) to a wide variety of commercial and financial conduct and have not limited the statute to non-commercial conduct. *Printy v. Dean Witter Reynolds,* 110 F.3d 853, 855–56 (1st Cir.1997) (using credit the plaintiffs computer mistakenly approved for margin borrowing); *First National Bank of Maryland v. Stanley (In re Stanley),* 66 F.3d 664, 665–66 (4th Cir.1995) (using credit mistakenly approved); *Piccicuto v. Dwyer,* 39 F.3d 37, 40–42 (1st Cir.1994) (intentional interference with an advantageous business relationship and unfair trade practices in a commercial context); *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1227–1228 (6th Cir.1991) (conveyance of property subject to a mortgage without mortgagee's consent or knowledge); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini),* 780 F.2d 1440, 1441–42 (9th Cir. 1986) (debtor directed promotional agent to deliver prepayments to debtor's partnership in violation of agreement).

Despite differences in wording, decisions within the Second Circuit have been consistent about the type of behavior that will lead to section 523(a)(6) non-dischargeability. Behavior that the court cannot justify on any level will lead to non-dischargeability. *Mar-*

tin v. Key Bank of New York (In re Martin), 208 B.R. 799, 801–803 (N.D.N.Y.1997) (the debtor sold collateral subject to a security agreement and attempted to conceal assets); Wright v. Bujnowski (In re Wright), 209 B.R. 276, 278–79 (E.D.N.Y.1997) (the debtor failed to pay employees' health insurance policies timely despite warnings from the insurer that termination would result): Moog Employees Fed. Credit Union v. Kibler (In re Kibler), 172 B.R. 740, 741–42 (Bankr. W.D.N.Y.1994) (a debtor who owned an antique car pledged as security disassembled the car and sold the parts); Community Mut. Sav. Bank v. Landrin (In re Landrin), 173 B.R. 307, 309 (Bankr.S.D.N.Y.1994) (a bank employee was convicted of larceny for taking money from employer); Marine Midland Bank v. Huber (In re Huber), 171 B.R. 740, 743–46 (Bankr.W.D.N.Y.1994) (the debtor tiled frivolous and harassing lawsuits against a bank to force it to forego its claims on the debtor's student loans). Davidcraft Corp. v. Baer (In re Baer), 161 B.R. at 335–37 (conversion of plaintiff's of dice equipment and files); Metromedia Co. v. Fugazy (In re Fugazy), 157 B.R. 761, 762–64 (Bankr. S.D.N.Y.1993) (RICO, mail fraud, wire fraud and bankruptcy fraud); In re Kaperonis, 156 B.R. at 737–739 (drag racing); Berman v. Berman (In re Berman), 125 B.R. 74. 75–76 (Bankr.E.D.N .Y.1991) (husband withdrew money held jointly in anticipation of entry of the Final Judgment Dissolution of. Marriage); Cablevision Sys. Corp. v. Cohen (In re Cohen), 121 B.R. 267.268–270 (Bankr. E.D.N.Y.1990) (debtor enabled people to receive cable television illegally).

The cases in which courts denied requests for non-dischargeability under § 523(a)(6) have as a common theme that persons of honest character could have committed the acts or mistakes which led to legal liability. Peerless Ins. Co. v. Casey (In re Casey), 181 B.R. 763, 765 (Bkrtcy.S.D.N.Y.1995) (failure to account and remit funds to the Lottery Division); Deere & Co. v. Contella (In re Contella), 166 B.R. 26, 28 (Bankr.W.D.N.Y. 1994) (summary judgment denied where debtor sold the security interest but made good faith attempt to pay creditor); Glenn v. Hrim (In re Hrim), 196 B.R. 237, 239–41 (Bankr.N.D.N.Y.1993) (logger fell upon fi-nancial difficulties and failed to pay tree owner for removal of trees and damage to tree owner's road); Ford Motor Credit Co. v. Gallaudet (In re Gallaudet), 46 B.R. 918, 920–23 (Bankr.D.Vt.1985) (failure to make payment for eleven cars sold out of trust in breach of a floor planning agreement).

To summarize, the statutory element of maliciousness will be found by imputation where the debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and, most important, and under some aggravating circumstance such as to warrant denial of discharge. In the absence of a finding of "Biblical malice," an ordinary tort or breach of contractual or statutory duty generally is not sufficient to deny discharge under subsection (6) without some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the "fresh start" to which the "honest but unfortunate" debtor would normally be entitled under the Bankruptcy Code.

### The law applied to the facts

Applying the foregoing principles to the facts in this case, I conclude that summary judgment cannot be granted with respect to the Damages Judgment, which related to the District Court Action defendants' conduct during the period from termination of the franchise on August 19, 1994 through commencement of the Action on November 21, 1994. The Damages Judgment represented a judicial determination of liability and damages for breach of contract and trademark infringement. There is nothing in either the Default Judgment Report or the District Court's order and judgment modifying and confirming that Report constituting a tending of either "Biblical malice," or other aggravating circumstance sufficient to warrant a finding of imputed malice under the case law. Breach of contract and copyright and trademark infringement constitute legal wrongdoing giving rise to damages under State and Federal law. But such conduct, without more, is not the type of aggravated socially reprehensible conduct as to warrant

the grave consequence of denial of discharge. Indeed, while not determinative, the Magistrate Judge in this case denied an award of punitive damages in his Report regarding the defendants conduct prior to the November 22, 1994 Injunction Order.

 The situation is different with regard to the Contempt Judgment, covering the period from November 22, 1994 through March 1995. During this time frame the defendants were constrained not only by Federal statutory and common law prohibitions against copyright and trademark infringement, in addition to the contractual restraints of the Franchise Agreement, but by an explicit and unambiguous order of the District Court. The defendants had full knowledge of the Franchise Agreement, the Federal copyright and trademark laws and, most particularly, the Injunction Order to which they had appended their written consent. The existence of the Injunction Order and the defendants' defiance of it removes the Contempt Judgment from the category of ordinary judgments for violation of common law or statutory duties. It is this Court's conclusion that the Debtor's persistent violations of the Injunction Order and the District Court orders dated January 13, January 17 and March 14, 1995, which the Magistrate Judge found as a fact to be "blatant and willful," constitute the type of aggravating circumstances which the courts in the Second Circuit and elsewhere have found to he sufficient to satisfy the "malicious" requirement of subsection (6). The Debtor's persistent violation of Bundy's rights under the Franchise Agreement and under Federal statute, coupled with the District Court's explicit finding of "blatant and willful" violation of not one but four orders of the District Court, constitutes "willful and malicious injury" as a matter of law.

 Contrary to the Debtor's arguments, there are no "ambiguities or inferences to be drawn in the Debtor's favor" (Debtor's Memorandum in Law at 4). The fact that the Debtor "was neither called, nor did she appear, to testify" at the Magistrate Judge's hearing on contempt damages (*id.* at 6), and the fact that "M.J. Fox refers generally to all the defendants in the Federal Action and makes no specific ruling regarding the Debtor, who was not present to testify" (*id.* at 6–7), are both misleading and irrelevant. There is no dispute that the Debtor was an officer, indeed the President, of defendant MEI. There can be no dispute that the Debtor was enjoined by the Injunction Order (which applied to defendant MEI and its officers, employees and agents) and the District Court orders of January 13, January 17 and March 14. The fact that only the Debtor's husband gave testimony at the contempt damages hearing does not exonerate the Debtor or indicate that the Magistrate Judge's findings did not apply to the Debtor. Indeed, the District Court specifically summoned the Debtor, as well as her husband, to appear in Court on January 13, January 17 and March 14, at which times both the Debtor and her husband were admonished by the Court; and because of her failure to comply with the District Court's Order on March 14 the Court issued a bench warrant pursuant to which the Debtor was arrested on March 17, 1995. The Contempt Report refers specifically to the Debtor at page 2 (three times), page 3, page 4 (twice), page 5, page 9, and page 10. At the time of the contempt damages hearing and the Contempt Report the Debtor was a named defendant in the District Court Action. There is no basis to suggest that the references to "defendants" in the Contempt Report or in the Contempt Judgment were not intended to refer to the Debtor, whose name appeared in the caption. Finally, the Debtor cites no authority for the proposition that references to "defendants" in a decision or judgment issued by a court does title include all named defendants, or that it is necessary to refer to individual defendants by name in order for the doctrine of collateral estoppel to apply.

To summarize, the Debtor is simply wrong in arguing that "There was no specific finding as to the activities of Deborah Blankfort that is capable of being used in the case at bar in support of the motion for summary judgment" (Debtor's Memorandum in Law at 7). There can be no doubt that the Magistrate Judge's finding that "Defendants have been in blatant and willful violation of the consent order issued on November 22, 1994"

and his subsequent findings, as well as the Contempt Judgment signed by the District Court, intended to and did refer to all of the named defendants in the District Court Action, including the Debtor. Indeed, this Court is bound to construe all references to "defendants" to refer to *all* of the defendants in the District Court Action in the absence of any indication by the Magistrate Judge or the District Judge that either the Report or the Contempt Judgment, was not intended to refer to the Debtor. Debtor's contention in her "Statement Pursuant to Bankruptcy Rule 7056–1" that "Deborah Blankfort's own activities with respect to the determination of Magistrate Judge Fox were not an issue material to Magistrate Judge Fox' conclusions" is untenable. First, it is perfectly clear from the transcripts of the District Court proceedings submitted in support of the motion for summary judgment, as well as the Contempt Report, that both Magistrate Judge Fox and District Judge Parker did, in tact, base their findings, conclusions and judgment on the individual conduct of both the Debtor and her husband. Second, unless and until a judgment issued by a court of competent jurisdiction is reversed on appeal or modified by the court issuing the judgment, it must be presumed that each defendant hits been held liable based upon his or her own conduct. This Court is obligated to give effect to the Contempt Judgment of the District Court, and it is impermissible for this Court to deny collateral estoppel based upon a supposition or inference at variance with the unambiguous findings, conclusions and judgment of the District Court.

The Debtor has shown no ambiguity in the Magistrate's Contempt Report or in the Default Judgment. She has submitted no evidence, either by affidavit or document, demonstrating either generally or with the required particularity that there is any dispute as to any issue of fact requiring a trial, and she has suggested no inference that might be drawn in her favor from the undisputed facts that would defeat summary judgment.

## Conclusion

To summarize this Court's rulings, Bundy's motion for summary judgment is based entirely on the collateral estoppel effect of the District Court's Damages Judgment and Contempt Judgment. Accordingly, the elements of a claim for non-dischargeability under section 523(a)(6) must be established clearly and unambiguously in the District Court Judgments and the Reports of the Magistrate Judge on which the Judgements were based. The element of "willful" injury is clearly and unambiguously established with respect to each Judgment. The element of "malicious" injury is not.

Under the law in this Circuit, the element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor. The Damages Judgment was based solely upon conduct of the defendants constituting breach of contract and copyright and trademark infringement, with no evidence of actual malice and no aggravating factor sufficient to deny the discharge normally granted to the "honest but unfortunate" debtor. Accordingly, the motion for summary judgment is denied as to the Damages Judgment, without prejudice to Bundy's right to prove malice or aggravating circumstance at a trial.

The Contempt Judgment was based not only upon the defendants' violations of contract and Federal copyright and trademark law, but also upon defendants' "blatant and willful violation" of the District Court's Injunction Order and subsequent orders. The District Court finding of "blatant and willful" contempt of court orders by the defendants, including the Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6). A person who persists unabated in unlawful conduct, after the entry of a court order specifically and unambiguously enjoining such conduct, and who continues her unlawful conduct in violation of further orders of the court, cannot be characterized as the "honest but unfortunate" debtor whom Congress intended to favor with the extraordinary relief of a discharge in bankruptcy. Contempt of court strikes at the fabric of the

judicial system. This Court will not grant its blessing to such conduct by granting a discharge to this Debtor in the face of the Contempt Judgment and the findings of the Magistrate Judge on which that Judgment was based. Accordingly, the motion for summary judgment is granted with respect to the Contempt Judgment.

Bundy's counsel is directed to prepare, and counsel for both parties are directed to agree upon, an order determining the motion for summary judgment in accordance with the foregoing decision, without prejudice to the right either side to appeal from the order.