**In re David BUSCH, Debtor.**

**Jacqueline Sanger, Plaintiff,**

**v.**

**David Busch, Defendant.**

**Bankruptcy No. 02–18149.**
**Adversary No. 03–90074.**

United States Bankruptcy Court,
N.D. New York.

June 21, 2004.

Michael Jude O'Connor, O'Connor, O'Connor, Bresee & First, P.C., Albany, NY, for Debtor/Defendant.

L. John Van Norden, Parisi & Saccocio, PLLC, Schenectady, NY, for Plaintiff.

### Memorandum–Decision and Order

ROBERT E. LITTLEFIELD, JR., Bankruptcy Judge.

The Plaintiff, Jacqueline Sanger ("Plaintiff"), initiated the above-captioned adversary proceeding seeking a determination that a certain judgment debt (the "Debt") is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). In June 2000, the Plaintiff filed suit against the Defendant/Debtor, David Busch ("Debtor"), and Albany Air Systems, Inc. ("AASI"), a corporation sub-

stantially owned and controlled by the Debtor, in the United States District Court for the Northern District of New York (the "District Court"), claiming *"quid pro quo"* and "hostile environment" sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e et seq.)[1] and the parallel provisions of the New York State Human Rights Law (N.Y. Exec. Law § 296 et seq.). The Debtor and AASI failed to answer the complaint in *Sanger v. Albany Air Systems, Inc. and David Busch, Docket No.: 01–CV–1176* (the "District Court Action"), causing a default judgment to be entered against them for liability only. Upon their continued default at inquest, the Plaintiff obtained a jury verdict for compensatory and punitive damages totaling $400,000. The Honorable David N. Hurd ("Judge Hurd"), after awarding the Plaintiff final attorney's fees of $30,000 and expense reimbursement of $232.20, directed the District Court Clerk to enter an amended and final judgment (the "Judgment") totaling $430,232.20, which was done in September 2000. After exhausting the appellate process, the Debtor commenced this Chapter 7 case, in large part, to discharge the Debt. The court must now determine whether the Debt is for "willful and malicious injury" so as to preclude its discharge under § 523(a)(6).

### Jurisdiction

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1) and 1334(b).

---

1. Title VII prohibits sex discrimination in employment. Sexual harassment is a form of sex discrimination that is actionable under the theories of *quid pro quo* and hostile environment; both theories require aggrieved individuals to prove, by a preponderance of the evidence, that the employers' discriminatory conduct negatively altered the terms and conditions of their employment. An analysis of actionable sexual harassment under Title VII is provided *infra*.

### Factual and Procedural Background

The Debtor filed a Chapter 7 petition (the "Petition") on December 24, 2003, listing on Schedule D (Creditors Holding Secured Claims) the Plaintiff's $430,233 judgment lien.[2] On March 17, 2003, the Plaintiff commenced this adversary proceeding by filing a complaint (the "Complaint") to except the Debt from discharge pursuant to § 523(a)(6). The Complaint is based entirely on the District Court Action and the District Court's finding of intentional employment discrimination under Title VII (Complaint ¶ 22); the gravamen of the Complaint is as follows:

> In the underlying District Court action, plaintiff proved during a jury inquest, conducted the 15th day of April, 2002, that during the employment by the defendant/debtor from April 1998 through June 27, 2000 she had been subjected to a regular, frequent, unwanted, uninvited, and abusive pattern of sexually charged behavior, lewd sexual comments, innuendo, propositions, jokes, and offensive physical contact including the touching of her body by the defendant and his exposing his intimate and private body parts to her on one or more occasions.

(Complaint ¶ 5.) The Debtor filed an Answer on April 17, 2003, admitting allegations relating to the procedural history of the District Court Action, but denying all allegations of sexual harassment. On May 7, 2003, the court issued a Scheduling Order setting trial for November 10, 2003.

The material facts of this dischargeability action are derived from the District Court record.[3] The following is the background of the District Court Action leading to the Complaint before this court.

The Plaintiff was employed by AASI for approximately two years prior to her resignation in April 1998; during her second year of employment, the Debtor was the sole managing officer of AASI. In September 2000, the Plaintiff filed an administrative complaint with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"), claiming that the Debtor and AASI violated Title VII and state law by committing and condoning sexual harassment in the workplace. In July 2001, following the Plaintiff's request that the EEOC dismiss the administrative proceeding to allow her to file a civil suit in District Court, the Plaintiff obtained a "Notice of Right to Sue" and commenced the District Court Action.

The Debtor elected to disregard the District Court Action, which resulted in Judge Hurd's February 2002 order first, directing entry of a default judgment for liability only against the Debtor and AASI; second, scheduling an inquest on April 15, 2002 "for the purpose of determining the extent and scope of damages sustained by reason of defendants['] violation of law." (Judge Hurd's February 26, 2002 Order Directing Entry of Default, Complaint Ex. A.) The Plaintiff testified during inquest that the Debtor committed routine acts of sexual harassment, including: repeated attempts to kiss her (Plaintiff's Exhibit 2 at 19) [hereinafter the "Transcript"]; putting his hand around her waist and trying to kiss and touch her (*Id.* at 22); attempting

---

2. It is undisputed that the Plaintiff is owed a principal balance of $420,764.10 as of December 8, 2003. However, by Order dated July 1, 2003, over the opposition of the Plaintiff's counsel, the Plaintiff's judgment lien was avoided as impairing the Debtor's homestead exemption pursuant to 11 U.S.C. § 522(f).

3. Certain entries of the District Court record, including the inquest transcript, comprise part of the trial record in this case because they were admitted into evidence without objection from the Debtor's counsel.

to put his hands underneath her shirt; joking about getting an apartment where they could "fool around" (*Id.* at 23); unzipping his pants and exposing his genitals; directing her to write a letter advising a client of the corporation's policy against sexual harassment, after which he stated, "oh, well, if they only knew"; exposing and touching his genitalia to her arm on two occasions (*Id.* at 22, 27); and insinuating that he would give her petty cash and provide an apartment for her if she accepted his sexual advances (*Id.* at 29). The Plaintiff stated that she became pregnant while employed by AASI and, after notifying the Debtor of her condition, his conduct worsened. The Plaintiff further testified that the Debtor's conduct caused her to suffer the following harm: she required counseling on four to six occasions; unemployment benefits were unavailable because she voluntarily resigned (*Id.* at 30); her medical insurance lapsed; she lost retirement benefits; she experienced difficulty finding other employment because she feared placement in a similar work environment (*Id.* at 32); and she was afraid to go outside her house at night because she feared that the Debtor was "going to try and kill [her]" (*Id.*). Finally, the Plaintiff testified that she was also sexually harassed by her male co-workers, whose conduct was known to the Debtor, yet the Debtor and AASI took no disciplinary action to remedy the hostile work environment.

After summation by Attorney Van Norden,[4] Judge Hurd charged the jury, in pertinent part:

> Neither the Defendant Albany Air Systems, Inc., [nor] David Bus[c]h have answered, so we assume that they are in default, and they are admitting liability, and they are admitting responsibility for the claims set forth by Ms. Sanger.
>
> It will be your duty now to consider three areas, whether she is entitled to compensatory or actual [sic] dangers or only nominal damages and punitive damages.
>
> Now, the plaintiff has the burden of proving damages by a preponderance of the evidence, and it is for you ... to determine the damages, if any, that have been proved ....
>
> [Y]ou must determine an amount that will fairly compensate her for all of her damages. These damages ... are called compensatory damages. [T]he purpose of compensatory damages is to make the plaintiff whole, that is, to compensate her for the damages that she has suffered. [C]ompensatory damages are not limited to financial losses such as you have heard today, loss of earnings or loss of medical benefits or loss of medical insurance that the plaintiff may have incurred.
>
> She is also entitled to compensatory damages for physical injury, pain and suffering, mental anguish, shock and discomfort, that she has suffered because of the defendants' conduct. You may award damages for any injuries the plaintiff proves were proximately caused by the defendant[s] ....
>
> ....
>
> [F]inally you may also, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter a defendant and others from committing similar acts in the future. The plaintiff has the burden of proving that punitive damages should be awarded and the amount ...

---

4. As the Plaintiff's bankruptcy counsel, Attorney Van Norden is intimately familiar with the factual bases for the Plaintiff's § 523(a)(6) claim since he also represented the Plaintiff in the District Court Action.

by a preponderance of the evidence. You may award punitive damages only if you find the defendants' conduct was malicious or [sic] reckless disregard of the plaintiff's rights.

Conduct is malicious if it was accompanied by ill will or spite or for the purpose of injuring another. Conduct is a reckless disregard of plaintiff's rights if, under the circumstances, it reflects complete indifference to the safety and rights of others.

(*Id.* at 41–43.) The jury, without explanation,[5] awarded compensatory damages of $150,000 and punitive damages of $250,000. In addition, Judge Hurd awarded the Plaintiff attorney's fees of $99,767.80 and costs of $232.20, raising the total judgment amount to $500,000. The District Court Clerk entered a conforming judgment against the Debtor and AASI on April 19, 2002. (April 19, 2002 Judgment in a Civil Case; Complaint, Ex. B.) The Debtor appealed the same to the United States Court of Appeals for the Second Circuit (Notice of Appeal; Complaint Ex. C), but withdrew the appeal from active consideration, without prejudice, pending Judge Hurd's determination of a motion to vacate or modify the judgment (August 15, 2002 Stipulation and Order; Complaint Ex. E). Judge Hurd denied the motion to vacate, but reduced the attorney's fee award to $30,000. (September 4, 2002 Order; Complaint Ex. F). The Judgment at issue in this proceeding, which arose as an amended and final judgment in the District Court Action, was entered in September 2002 for

$430,232.20. (September 5, 2002 Judgment in a Civil Case; Complaint Ex. G; Plaintiff's Ex. 1.) Finality was given to the District Court Action when the Debtor subsequently withdrew the appeal with prejudice. (October 16, 2002 Letter of Erik C. Sanderson; Complaint, Ex. H.)

At the Plaintiff's request, Judge Hurd appointed a receiver (June 19, 2002 Order; Complaint Ex. D), who executed upon the Judgment and turned over $16,256.53 to the Plaintiff. Approximately six months later, the Debtor filed the Petition.

Twice in this proceeding, the Plaintiff moved for and was denied summary judgment on the Complaint. In both instances, the Plaintiff sought to invoke the doctrine of collateral estoppel to give preclusive effect to the Judgment. While the Debtor never brought a competing motion for summary judgment, he opposed the Plaintiff's motions because the Judgment did not address the § 523(a)(6) factors and, therefore, the Plaintiff could not rest her case on either res judicata or collateral estoppel. In its July 1, 2003 Order, the court denied the Plaintiff's initial motion for summary judgment because it determined that questions of fact existed with regard to whether the Debt fell within the narrow § 523(a)(6) exception to discharge. On or about July 14, 2003, the Plaintiff requested that the court reconsider its ruling in light of the Supreme Court's exposition on punitive damages in *Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). (Van Norden Letter of June 19,

---

**5.** The Transcript references that jury verdict sheets were given to each of the jurors. (Tr. at 45.) Judge Hurd orally reviewed the questions and advised the jurors to answer questions 3 (whether Plaintiff was entitled to punitive damages against AASI), 4 (whether Plaintiff was entitled to punitive damages against the Debtor), and, if they answered yes to either, 5 (setting the amount of punitive

damages). The record does not indicate the rationale for their answers. Moreover, the civil docket for the District Court Action, which was attached as Exhibit A to the Plaintiff's initial summary judgment motion, indicates that a Jury Verdict was filed on April 19, 2002; however, this document is not in evidence in this proceeding.

2003.)[6] The court held a status conference on July 22, 2003, which was closed upon a determination that the parties would proceed to trial on November 10, 2003.[7] The court then issued an Amended Order on October 27, 2003, ruling that *Kolstad* "is distinguishable from the present case based upon a different standard and standards of proof required in 11 U.S.C. § 523(a)(6) matters and also based upon the fact that there [were] no specific findings of fact by the [District] Court or the jury in the [District Court Action] decided prior to the filing of the Chapter 7 case."

The Plaintiff's second motion for summary judgment was received on November 4, 2003, less than one week from trial. On November 6, 2003, by oral decision, the court again denied the Plaintiff's request for summary judgment because the jury charge was too ambiguous to support findings of willfulness and malice by the Debtor, but such evidence could be adduced at the scheduled trial before this court.

During direct examination, the Debtor stated that he defaulted in the District Court because he failed to understand the seriousness of the District Court Action. When asked about his prior relationship with the Plaintiff, he stated that they were "friends" who had an amicable, social relationship which included the Plaintiff's frequent attendance at Busch family gatherings. According to the Debtor, his association with the Plaintiff continued beyond her resignation from AASI, as evidenced by her personal telephone calls to the Debtor when she was involved in an automobile accident and when she went into labor. On cross-examination, the Debtor denied ever forming an intent to harm the Plaintiff. Although he acknowledged that the Plaintiff never consented to sexual advances or displayed any interest in having an intimate relationship with him, he unequivocally denied that he ever sexually harassed her. The Debtor's portrayal of his relationship with the Plaintiff was corroborated by his wife, Tracy Busch, who attested to the Plaintiff's social involvement with the Busch family.

As discussed *supra*,[8] the Plaintiff relies on the Transcript in lieu of her testimony before this court. Thus, the court did not have the benefit of hearing testimony, assessing the credibility, and observing the demeanor of the Plaintiff.

### Arguments

Although the court clearly defined the scope of trial, the Plaintiff's position does not deviate from the one taken in her pretrial submissions and summary judgment motions: the Debt is nondischargeable as a matter of law. First, the Plaintiff relies heavily on *Kolstad* for the proposition that the Judgment should be given preclusive effect because the District Court already decided the issue of willfulness before awarding punitive damages under Title VII, as amended by the Civil Rights Act of 1991 (the "1991 Act") (42 U.S.C. § 1981a). The Plaintiff argues that the 1991 Act

---

6. The court refers to Docket Number 18. Although Attorney Van Norden's letter is dated June 19, 2003, the document bears the Bankruptcy Court Clerk's stamp of receipt on July 14, 2003.

7. Following this status conference, on July 25, 2003, the Plaintiff filed a Notice of Appeal and a Motion for Leave to Appeal with respect to the July 1, 2003 Order, arguing that the November 2003 trial was unnecessary since the District Court had already determined that the Debtor acted willfully with the intent to injure the Plaintiff. (Plaintiff's Statement Pursuant to [Fed. R. Bankr.P.] 8003.) Both were withdrawn, however, because of procedural defects, by stipulation and order dated September 22, 2003.

8. *See supra* note 3.

would have required the District Court to make a threshold determination that the Plaintiff's testimony established a *prima facie* case of intentional employment discrimination, which constitutes a willful violation of federal law, before submitting the option of punitive damages to the jury. While the Plaintiff concedes that the Supreme Court's holding in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), requires that the Debtor have intended to cause the Plaintiff's injuries (Plaintiff's Pre–Trial Statement and Brief at 5), the Plaintiff suggests that the necessary categorization of the Debtor's acts as "intentional" under Title VII inherently satisfies the willfulness prong of § 523(a)(6). It can be inferred from the Plaintiff's reliance on *Kolstad*, wherein the Supreme Court addressed intentional versus disparate impact discrimination, that the Plaintiff assumes "intentional employment discrimination" under Title VII automatically leads to "willful and malicious injury" under § 523(a)(6).

Second, relying upon the intentional tort trigger of § 523(a)(6),[9] the Plaintiff argues that the specific acts committed by the Debtor constitute intentional torts (*i.e.*, assault and battery). (Plaintiff's Pre–Trial Statement and Trial Brief at 5.) In order to bring the Debtor's acts within the *Geiger* standard, the Plaintiff asks the court to treat the underlying acts of sexual harassment as intentional torts, thereby obviating any further examination of the Debtor's intent.

Post-trial, the Plaintiff asks this court to adopt the approach taken by the bankruptcy court in the case of *In re Gross*, 288 B.R. 655, 661 (Bankr.E.D.N.Y.2003), wherein the court concluded that damages stemming from the tort of malicious prosecution were within the scope of § 523(a)(6) because the debtor engaged in intentional

misconduct that "unavoidably caused injury" to the plaintiff. The Plaintiff states that the Debtor's reliance on his social relationship with the Plaintiff "misses the point" since *In re Gross* held that *Geiger* does not require a specific intent to cause injury. (Van Norden Letter of November 12, 2003.) Although the Plaintiff acknowledges that the Debtor may have acted "without malevolent intent," the Plaintiff nonetheless contends that the Debtor's acts of sexual harassment should prevent discharge of the Debt because they were intentional acts committed in violation of state and federal law.

Third, the Plaintiff mirrors one of her summary judgment arguments by asking the court to declare the Debt nondischargeable on policy grounds. The Plaintiff submits that to allow the Debtor to discharge the Debt would undermine one of the legislative purposes of Title VII, which is to eradicate gender based discrimination from the workplace.

The Debtor, however, maintains that the cumulative record of the District Court Action and this adversary proceeding do not support a finding of "willful and malicious injury." The Debtor points to the default nature of the Judgment and challenges the substantive merit of the District Court Action. Citing the unique facts of the District Court Action, the Debtor asserts that there is no basis for a § 523(a)(6) determination because he did not commit the predicate acts of sexual harassment; therefore, he could not have intended to cause the Plaintiff's injuries.

The Debtor argues that collateral estoppel elements do not apply in this adversary proceeding because of Judge Hurd's inclusion of the "reckless disregard" instruction in the jury charge. Rather, he contends

9. *See* discussion of *Geiger* at p. 11 *infra*.

that the punitive damage award alone is inconclusive because of the breadth of the federal and state laws at the heart of the District Court Action and the various standards for recovery of damages thereunder, including a lesser standard of reckless conduct that is not sufficient to support a finding under § 523(a)(6). Therefore, the Debtor asserts that the District Court did not substantively address the factual issues of willfulness and malice which are presently before the court. Moreover, the Debtor states that the Plaintiff's reliance on the holdings of *In re Gross* is misplaced because that court specifically addressed the tort of malicious prosecution, which includes a specific intent element akin to willfulness under § 523(a)(6). (O'Connor Letter of November 19, 2003 at 2.)

As justification for the Plaintiff's filing of the administrative complaint and District Court Action, the Debtor infers that the Plaintiff sought retribution for his failure to give her pay raises in the year prior to her resignation. He points to his wife's testimony that the Plaintiff complained about her salary and requested a pay raise shortly before resigning from AASI. He also reaffirms his testimony that the Plaintiff was a friend of the Busch family and, therefore, asks the court to consider that his alleged intent to cause the Plaintiff's injuries is entirely inconsistent with his prior relationship with the Plaintiff.

### Discussion

*I. Section 523(a)(6)*

 The plaintiff has the burden of establishing the elements of § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor." COLLIER ON BANKRUPTCY

¶ 523.05 at 523–20 (15th ed. rev.2003). Section 523(a)(6) provides that "[a] discharge ... does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied." *In re Krautheimer,* 241 B.R. 330, 340 (Bankr.S.D.N.Y.1999) (citations omitted).

 The "willful" prong of § 523(a)(6) was translated by the Supreme Court in *Geiger* as follows:

The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, ... the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act,*" *not simply "the act itself."*

*Geiger,* 523 U.S. at 61–62, 118 S.Ct. 974 (quoting *Restatement (Second) of Torts § 8A* (1964) (emphasis added)). Consequently, the Supreme Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64, 118 S.Ct. 974.

We know from ... *Geiger* ... that the exception to discharge set forth in Section 523(a)(6) for a willful and malicious

injury: (1) covers acts done with the actual intent to cause injury; (2) does not cover deliberate or intentional acts that merely lead to injury; (3) covers intentional torts that require the actor to intend the consequences of an act, not simply the act itself; and (4) does not cover recklessly or negligently inflicted injuries.

*In re Tompkins,* 290 B.R. at 198. While *Geiger* addresses only the first prong of § 523(a)(6), the Second Circuit interpreted "malicious," as used in § 523(a)(6), to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d 84, 87 (2d Cir.1996) (citations omitted). Actual malice may be implied by the circumstances surrounding the debtor's acts and conduct. *Id.* at 88. Thus, in order to prevail in this proceeding, the Plaintiff must prove that: (1) the Debtor deliberately and intentionally caused the resulting injuries to the Plaintiff; and (2) the Debtor acted maliciously.

*II. Collateral Estoppel/Issue Preclusion*

■ It is well-established that the doctrine of collateral estoppel applies to dischargeability proceedings under § 523(a). *Grogan v. Garner,* 498 U.S. at 284, 111 S.Ct. 654 (bankruptcy court may give preclusive effect to those elements of the prior claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action). In this proceeding, however, the court has ruled that the doctrine of collateral estoppel is inoperable; nonetheless, the Plaintiff's continued reliance on the preclusive effect of the Judgment requires further examination. The Plaintiff exhaustively seeks to invoke the doctrine of collateral estoppel in order to establish a *prima facie* case of "willful and malicious injury" under § 523(a)(6). Accordingly, she has the burden of "proving

all the requisites for its application." Hon. BARRY RUSSELL, BANKRUPTCY EVIDENCE MANUAL § 30, at 200 (2004). "To sustain this burden a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Id.*

■ The Second Circuit requires satisfaction of four conditions before a court may adopt findings of fact or conclusions of law from a prior proceeding to preclude relitigation of issues in a later proceeding:

(1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 44 (2d Cir.1986). The first and second of these requirements, the identity of issues in both actions and actual litigation and determination of issues in the District Court Action, create the controversy in this proceeding. "The most difficult element of the test is the requisite 'identity of issue' requirement of the first prong." RUSSELL, *supra,* § 30, at 199 (2004). Here, there is no substantive identity between the pertinent issues in the two proceedings, which is fatal to the operation of the doctrine of collateral estoppel.

■ In pursuing her claim of nondischargeability, the Plaintiff relies entirely upon the collateral estoppel effect of the Judgment instead of supplementing that Judgment with evidence that would support the elements of § 523(a)(6). The Plaintiff contends that, because the District Court found the Debtor liable of a "willful violation of federal and state law" (Complaint ¶ 22), the Plaintiff has preclu-

sively shown that the Debtor committed a "willful and malicious injury" which must be excepted from discharge under § 523(a)(6). This argument necessarily assumes that the standards for intentional discrimination and punitive damages under Title VII are sufficiently similar to those for "willful and malicious injury" under § 523(a)(6). It is, therefore, necessary to define the precise question or questions adjudicated in the District Court Action.

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). There are two recognized classifications of discriminatory conduct that constitute actionable sexual harassment under Title VII:(1) *quid pro quo* harassment, where the misconduct is linked to a grant or denial of an economic *quid pro quo;* and (2) hostile environment harassment, where the misconduct "has the purpose or effect of unreasonably interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citing the EEOC Guidelines on Sexual Harassment, 29 CFR § 1604.11(a)(3) (1985)); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The Second Circuit has held that a plaintiff may establish a *prima facie* case of *quid pro quo* harassment by presenting evidence "that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions, or privileges of her em-

ployment." *Fitzgerald v. Henderson,* 251 F.3d 345, 356 (2d Cir.2001) (internal quotation marks omitted) (quoting *Karibian v. Columbia University,* 14 F.3d 773, 777 (2d Cir.1994)). In order to prevail on a claim of hostile environment harassment, the plaintiff must establish two elements: (1) that the misconduct is "sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create a hostile working environment," *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations marks omitted) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. at 67, 106 S.Ct. 2399); and (2) a specific basis for imputing the hostile work environment to the employer, *Fitzgerald v. Henderson,* 251 F.3d at 357 (citations omitted). With respect to the first element, so long as the work environment would objectively be perceived, and is perceived by the plaintiff, as hostile or abusive, there is no need for it to be psychologically injurious or cause the plaintiff to suffer injury. *Harris v. Forklift Systems, Inc.,* 510 U.S. at 22, 114 S.Ct. 367. The Plaintiff sued under both theories of sexual harassment in the District Court Action, but neither cause of action contains the willfulness element of a § 523(a)(6) claim. The identity of issues inquiry, however, does not end here.

The Plaintiff cites the punitive damages provision of Title VII (42 U.S.C. § 1981a) in support of the proposition that the District Court must have found "willful and malicious injury" to impose a punitive damages award against the Debtor. This statute provides in pertinent part:

(a) **Right or recovery.** (1) Civil rights. In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5 [or 2000e–16] ) against a respondent who engaged in unlawful inten-

tional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3 [or 2000e–16]), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 USCS § 2000e–5(g)], from the respondent.

. . . .

**(b) Compensatory and punitive damages.** (1) Determination of punitive damages. A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices *with malice or with reckless indifference to the federally protected rights of an aggrieved individual.*

42 U.S.C.S. § 1981a (emphasis added). As the Supreme Court explained in *Kolstad,* "the terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad,* 527 U.S. at 535, 119 S.Ct. 2118. Consequently, the Plaintiff did not prove, and was not required to, that the Debtor intended to harm her. Reckless indifference is sufficient for an award of punitive damages in cases of intentional discrimination under Title VII, but insufficient to establish "willfulness" under *Geiger,* which is the main "issue at stake" in this proceeding.

Moreover, because of the sparsity of the District Court record, it is impossible to ascertain whether the jury based its award of punitive damages on a finding of malice or reckless indifference. Absent a special verdict or interrogatories including findings of fact and conclusions of law, the court cannot determine that the issue of malice was actually litigated and determined in the District Court Action.

The Plaintiff's arguments to the contrary notwithstanding, a Title VII violation is substantially and demonstrably different from a "willful and malicious injury" under § 523(a)(6). The District Court was not faced with the pivotal issue presented in this proceeding, namely, whether the Debtor sexually harassed the Plaintiff with the intent to cause her harm. Under these circumstances, the Judgment cannot be given issue preclusive effect.

*III. Section 523(a)(6) Analysis*

As a matter of law, violations of Title VII will meet the actual malice standard under *Stelluti* for purposes of a § 523(a)(6) determination. Because sexual harassment is both illegal and morally reprehensible, it is impossible to conceive of an actionable sexual harassment case against an individual employer where that employer's conduct could be construed as anything other than "wrongful and without just cause or excuse." *In re Stelluti,* 94 F.3d at 87. Thus, malice is inherent in finding that the debtor is liable for sexual harassment. However, following the Supreme Court's holding in *Geiger,* Title VII claimants who seek to except their liquidated sexual harassment judgments from debtors' discharges will inevitably face the *difficult challenge of proving that their* harassers intended to cause their actual injuries.

In this case, the Plaintiff has met the test of *Stelluti* and satisfied the second prong of § 523(a)(6). In the District Court Action, the Plaintiff testified that

she was frequently subjected to sexual acts by the Debtor that were unsolicited, unwarranted, obscene, and illegal. As an officer of AASI, the Debtor understood that he was legally obligated to prevent sexual harassment in the workplace. Yet, the Debtor's employees were led by his abhorrent example and the dereliction of his corporate duties. This caused the Plaintiff to also endure the lewd remarks and conduct of her co-workers. There is no legitimate justification for the Debtor's outrageous conduct or his refusal to take appropriate remedial actions against those employees who violated the anti-discrimination laws. Under these circumstances, the court implies from these egregious acts that the Debtor's conduct was malicious.

Several considerations, however, cause the court to conclude that the Plaintiff has not met her burden of proof on the first prong of § 523(a)(6). Intent to cause injury was not a necessary element of the Title VII causes of action asserted against the Debtor in the District Court Action. In addition, it is clear that intent to injure was not a necessary underpinning for a punitive damages award. The question of whether the Debtor in fact intended to cause the Plaintiff's injuries is now, for the first time, squarely in issue. As the Supreme Court determined in *Brown*, this is the type of question that Congress intended this court to resolve. *See Brown v. Felsen*, 442 U.S. 127, 138, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

There is no question about the deplorable nature of the conduct for which the Debtor was held liable in the District Court; yet, the first part of the test for nondischargeability under § 523(a)(6) is not the gravity of misconduct, but intent to cause injury. *See In re Luppino*, 221 B.R.

693, 700 (Bankr.S.D.N.Y.1998). The Plaintiff must satisfy the first statutory prong by proving that the Debtor deliberately and intentionally caused the injuries that she recounted in the District Court Action. Because of the nature of sexual harassment, the Plaintiff's showing under *Geiger* is far more difficult than that under *Stelluti*. *See* Joanne Gelfand, Esq., *The Treatment of Employment Discrimination Claims in Bankruptcy: Priority Status, Stay Relief, Dischargeability, and Exemptions*, 56 U. Miami L.Rev. 601, 636–37 (2001) (Employers engaging in *quid pro quo* or hostile environment harassment may appreciate that their conduct could cause lost job opportunities or create a sexually charged atmosphere, but they may never intend to cause non-job related, psychological or physical injuries such as depression, nausea, sleeplessness, emotional distress, or loss of consortium.). Although sexual harassment under Title VII presupposes intentional conduct in the form of unwelcome sexual conduct, it does not require that the employer intend to injure the plaintiff. *Id.* at 635.

 While the court recognizes the minority view that a substantial certainty of harm can satisfy the willfulness requirement of § 523(a)(6), *see In re Jones*, 300 B.R. 133, 140 (1st Cir. BAP 2003) (citing *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997)) (advancing pre-*Geiger* definition of "willful and malicious" as "an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty"); *see also In re Gross*, 288 B.R. at 662 ("An intentional wrongful act that necessarily causes injury meets the willfulness standard under Geiger."), it finds no support for this position.[10]

---

10. Courts in the minority, including those within the First Circuit, have seemingly avoided any significant discussion of *Geiger*. In the

case of *In re Jones*, the Bankruptcy Appellate Panel found that "harm was suffered because the [debtor] unjustifiably disregarded [the

Accordingly, the court cannot deviate from *Geiger's* strict standard.

Moreover, the court finds no authority for treating sexual harassment as an intentional tort sufficient to operate as a basis for nondischargeability under § 523(a)(6). Although the Supreme Court likened sexual harassment to an intentional tort for purposes of determining whether an employer is subject to vicarious liability for the unlawful conduct of its employees, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 756–760, 118 S.Ct. 2257, it did not find that the harasser must intend to injure his victim, as required by *Geiger*. As set forth in *Geiger*, intentional torts generally require that the actors intend the consequences of their acts. *Geiger*, 523 U.S. at 61, 118 S.Ct. 974. For purposes of § 523(a)(6), the Supreme Court specifically rejected a broader interpretation, for fear of placing within the excepted category a wide range of situations in which the act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor. *Id.* at 62, 118 S.Ct. 974.

■■■ Within this framework, the court turns its attention to whether the Plaintiff has shown that the Debtor intended to cause her psychological and economic harm. Even if the acts of sexual harassment occurred exactly as alleged, nothing in the District Court Action or in this proceeding convinces the court that the Debtor intended to do so. There is no evidence that the Debtor ever intended to cause any of the injuries recounted by the Plaintiff in the District Court Action. In fact, an intent to cause the Plaintiff economic harm by forcing her to resign from AASI would have been contrary to the Debtor's self-interest so long as the Plaintiff's relationship with the Debtor's family extended beyond her employee status at AASI. It seems unlikely that the Debtor would have intended to terminate the Plaintiff's employment with AASI when his wife held interests in the corporation as a stockholder and officer, and she had an ongoing personal relationship with the Plaintiff. The Plaintiff would have been free, at any time, to notify Ms. Busch of the Debtor's conduct and the reasons for her resignation. Moreover, the Plaintiff admits that the Debtor "acted with specific intent to advance his own prurient interests at the expense of [her] right to be free from sexual attack and harassment." (Van Norden Letter of November 12, 2003.) This appears to be the only interest that could have motivated the Debtor. Because the court cannot find that the Debtor intended to harm the Plaintiff in any manner, the Plaintiff has failed to show willfulness under *Geiger*.

Finally, the Plaintiff's policy argument must also be rejected because it is contrary to the current state of the law. The court cannot resolve the inherent conflict between the policies underlying Title VII and the Bankruptcy Code. While Title VII seeks to protect employees by compensating them for losses suffered and to deter employers from future violations, the Bankruptcy Code fosters rehabilitation of the debtor and equality of distribution among creditors. Although discharge of their liquidated debts is a grave injustice for Title VII claimants, the Bankruptcy Code affords no special treatment for victims of sex discrimination. *Cf., e.g.*, 11

plaintiff's] right to be free from sexual harassment by engaging in behavior that created a hostile working environment." *In re Jones*, 300 B.R. at 139. The decision continued, however, to state that the willful requirement of § 523(a)(6) was satisfied because "there was sufficient evidence [in the Massachusetts Commission Against Discrimination action] to find that the [debtor's] actions were deliberate or intentional and that he did intend to harm or injure the [plaintiff]." *In re Jones*, 300 B.R. at 140.

U.S.C. §§ 523(a)(5) (excepting debts from discharge for alimony, maintenance, or child support); (a)(9) (excepting debts from discharge for death or personal injury caused by substance-related motor vehicle accidents). Thus, in cases where the individual employer files for bankruptcy relief, the victims are relegated to the protection of § 523(a)(6). Here, although it may seem to the Plaintiff to add insult to injury, § 523(a)(6), as it must be read under *Geiger,* allows the Debtor to discharge the Debt.

### Conclusion

Since the court finds that the Plaintiff has not established by a preponderance of the evidence that the Debt is attributable to a "willful and malicious injury," the relief requested pursuant to § 523(a)(6) is denied and the Complaint is hereby dismissed. For the foregoing reasons, the Debt must be discharged. It is so ORDERED.